Terre Haute & I. R. R. Co. v. Chicago, P. & St. L. Ry. Co.

1. NEGLIGENCE—*Master Responsible for his Servant.*—A railroad company contracted with another railroad company to run one of its engines over the track of the latter from East St. Louis to Smithboro; the former company furnished a conductor, and the latter an engineer and fireman. After passing a train at a way station the conductor signaled the engineer to go ahead, saying that he had time to run to Smithboro before another train was due there. In doing so a collision occurred, and the engine was damaged. In an action brought by the latter company against the former to recover the damage, it appeared that the conductor was familiar with the road, had a time table and knew that the colliding train was due at Smithboro, but had forgotten it. The engineer was not familiar with the road, had no time table and was ignorant of the approaching train. It was held that the conductor was negligent and that such negligence was chargeable to the company employing him so as to charge it with the damage done to the engine.

Memorandum.—Action of trespass on the case. Appeal from the Circuit Court of Bond County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

STATEMENT OF THE CASE.

On the 20th day of June, 1892, the appellee had two locomotive engines at East St. Louis, which, owing to high-waters and washouts, it was unable to get out over its own line of road, whereupon application was made to appellant to transfer them over its road to Smithboro. The following dispatches effected the arrangement:

"Dated 5, 20, 1892.

To N. K. Elliott, at Terre Haute via Smithboro: We would like to get engines 37 and 49 to Smithboro as soon as possible. * * * What will you charge us to run them to Smithboro?    D. W. RINER."

"From TERRE HAUTE, dated 5, 20, 1892.

To D. W. R.: We will take care of Eng. 36 and 49.

N. K. E."

"From ST. LOUIS, dated 5, 20, 1892.

To D. W. R.: Replying to your message to Mr. Elliott,

the running of your engines Nos. 7 and 19 (meaning 37 and 49). We will run them to Smithboro for you and charge you the usual rate, fifty cents per mile.        I. HILL."

The parties named had the right in their official capacity, to make the arrangement on behalf of their respective roads. On the morning of May 21, 1892, L. T. Foote, engineer, and Harry Bensen, fireman, who, for appellee, and in its employ, had charge of engine 49, with C. Smith, pilot or conductor, acting for and in the employ of appellant, placed the engine on appellant's road at East St. Louis, where the following order was received:

"Special order No. 1111, received 12:54 A. M.

                    From TERRE HAUTE, May 21, 1892.
Conductor and engineer J. S. E. engine 49.    Relay Depot
    Station.

Run to Smithboro wild. Run regardless of all freight trains. Use one hour and thirty minutes on time of No. 7.

C. SMITH,                          R. B. W.
FOOTE."

Another order similarly addressed, was received at Griswold Place station, which is not material. At Highland station, the following order was received: "Special order, No. 1122. From Terre Haute, May 21, 1892. Conductor and engineer J. S. E., 49. You have until five-thirty (5:30) A. M., to run to Greenville against No. nine (9); meet and pass No. twenty-nine (29), at Greenville.

SMITH.                              R. B. W.
FOOTE.
Correct. 4:58 A. M."

The engine got somewhat out of order, so that Greenville was not reached on time, and a stop was made at Pocahontas for from fifteen to twenty minutes to repair engine, at which place No. 9 passed, going west, some nine miles distant east from Greenville. It seems that the engineer had no time table. Neither he nor the fireman had been over the road of appellant before, and knew nothing about the time of the trains. The conductor, Smith, had a time card; had been regularly running on the road, and knew

the running time of the trains. As soon as No. 9 passed Pocahontas, going west, the conductor threw the switch and gave the engineer the signal to back out and the run was commenced for Greenville, some nine miles distant. After going about three miles, along which there were several curves in the road, just after passing one of them, a head end collision occurred, about six o'clock, A. M., with engine No. 17, drawing the "Diamond Special," a passenger train, which resulted in the demolition of engine 49, to recover which damage this suit was brought and a verdict and judgment obtained below for the sum of $3,207.48, from which this appeal was taken.

It appears from the evidence of the conductor, Smith, that he knew that No. 9 was due at Greenville at 5:20 A. M., and that No. 17, the Diamond Special, was due there at 5:32 A. M., only twelve minutes thereafter. He was asked this question: " Well, now you knew about its time (the time of No. 17, the Diamond Special) at that time ? A. I knew about it but had forgotten it. Q. You did not mention it to the engineer or fireman ? A. No, sir. Q. Who had control now of the engine this time in leaving and pulling out, if any one ? A. I directed the movement of the engine." The engineer testified that he never saw Smith until that morning aboard the engine, and that he was piloting engine 49 from East St. Louis to Smithboro ; that his duties were the same as a conductor ; he had charge of the engine. " I was going by his orders and the train dispatcher's." He further testified that when No. 9 passed Pocahontas, Smith opened the switch, signaled him to pull out, and said, " We have plenty of time to make Greenville for No. 11, I think it was." The fireman, Bensen, testified that " when No. 9 came, Mr. Smith said : " Well, number 9 is not carrying signals; we have got time enough to go to Greenville for No. 11." He threw the switch, we backed out, kept on, and we started for Greenville for No. 11." These statements are not contradicted.

W. H. Dawdy and T. J. Golden, attorneys for appellant.

Morrison & Worthington, attorneys for appellee.

Mr. Presiding Justice Sample delivered the opinion of the Court.

There is no substantial dispute as to the facts in this case. The controversy seems to arise as to the proper conclusion to be drawn therefrom. The appellant contends the facts show that the appellant's employe, the conductor, and the appellee's employe, the engineer, were co-ordinate with a limited authority, under the general supervision in running the engine, of the appellant's train dispatcher, whose orders were sent to and received by both, and therefore both were equally responsible for their proper execution. Hence, it is said, the collision occurred by the negligence of both, and there can be no recovery. The appellee contends that the facts show that for this particular business the engineer was the servant of appellant, under the control of its pilot or conductor, and was actually in its service at the time of the collision. Our conclusion is, the effect of the contract was, that if the appellee would furnish its engineer and fireman to mechanically operate the engine, under the appellant's superintendence, then it would furnish a conductor to take charge of and run the same from East St. Louis to Smithboro, for fifty cents per mile. That appellant's conductor actually directed the running of the engine, the same as any other conductor, is unquestionable. He testified, " I directed the movement of the engine." The fact that the train dispatcher directed his orders to the conductor and engineer did not change or affect in any way the relation of superior and subordinate, which in that service they sustained to each other. It is not shown but that all such messages are so directed to insure notice to each.

Doubtless an engineer is not bound to obey an order that he knows will imperil his life or the property in his charge, yet he is bound to obey what at the time appears to him to be a reasonable command. From the evidence it would not appear unreasonable to the engineer to obey the order of the conductor to pull out from Pocahontas after No. 9 had

I. C. R. R. Co. v. Creighton.

passed, which was to have been met at Greenville, nine miles further east; especially in view of the statements then made by the conductor, that it carried no signals indicating a train was following, and that they would have plenty of time to make Greenville. The engineer might well rely on the information supposed to be possessed by the conductor, and obey his orders. The conductor knew the running time of the trains on that road, and at the time had a time table in his pocket. He also knew that No. 17 was then due when he opened the switch and gave the order to pull out. He testified, "I knew about it, but had forgotten it." Our conclusion is that the conductor, as the servant of appellant, was in charge of the engine, and was required to exercise at least reasonable care in the performance of that duty. His negligence was that of appellant's, and therefore the judgment is affirmed.